**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| James Martin, | |
|---|---|
| Appellant, | NO. CV-08-2076-PHX-JAT |
| vs. | **ORDER** |
| Michael J. Astrue, Commissioner, Social Security Administration, | |
| Appellee. | |

Appellant James Martin appeals the Social Security Commissioner's denial of disability benefits. The Court now rules on his appeal (Doc. #18).

**I.      Background**

   **A.      Procedural Background**

Appellant, James Martin, filed an application for supplemental security income alleging a July 9, 2004[1] onset. The Agency denied his application initially and on

---

[1]Mr. Martin amended his onset date to April 15, 2005, the date he applied for Supplemental Security Income ("SSI") benefits, because SSI benefits are not payable prior to the application date.

reconsideration. On April 18, 2007, Mr. Martin appeared with counsel and testified before an Administrative Law Judge ("ALJ"). In a decision dated July 11, 2007, the ALJ found that Mr. Martin was not disabled because he could perform a significant number of jobs. The Appeals Council denied Mr. Martin's request for review of the ALJ's decision. Mr. Martin then filed this appeal pursuant to 42 U.S.C. §405(g).

### B. Medical Background

Mr. Martin bases his disability claim on back pain, arthritis, and an anxiety disorder. He has attached medical records documenting a history of back and neck pain, arthritis, insomnia, and anxiety/depression.[2] At different points, Mr. Martin has been diagnosed with degenerative disc disease, degenerative arthritis, and spinal stenosis. (*See, e.g.*, Tr. 287-88, 290.) He received many follow-up care appointments. Mr. Martin also was prescribed various medications throughout his treatment. At some point, Mr. Martin began walking with a cane.[3]

Mr. Martin obtained a mental status examination secondary to reactive anxiety and depression on July 18, 2005. On that date, he was unable to perform serial sevens (count backwards by seven, starting at 100) and exhibited abstract proverb responses. He was diagnosed with depression NOS with narcotic dependence, anxiety NOS, and an adjustment disorder. Medications were prescribed. (Tr. 298-99.)

On July 20, 2005, Mr. Martin had a consultative neurological exam with Dr. Randall Porter. His physical exam revealed a decreased range of motion in the back. A cervical spine MRI showed mild degenerative changes at the C6-7 level. A lumber spine MRI

---

[2]The Court will not attempt to recount here the entire voluminous medical record.

[3]Medical records indicate that Mr. Martin walks with a slow, antalgic gait. (*See, e.g.*, Tr. 282.)

showed moderately severe stenosis at L4-5 with degenerative disc and loss of disc space. Dr. Porter recommended that Mr. Martin continue with conservative treatment, but warned that surgical intervention might be necessary if his pain persisted. (Tr. 195-97, 235-37.)

On August 2, 2005, Mr. Martin had a consultative evaluation with State Agency psychologist Joelle Oizumi, Ph.D, at the request of Disability Determination Services. Dr. Oizumi noted that Mr. Martin appeared to be in significant pain and that he walked slowly, unsteadily, and cautiously. Mr. Martin used a cane. A mental status exam revealed that he had impaired attention and concentration skills, had fair abstract thinking skills, and moderately impaired recall skills. Dr. Oizumi diagnosed Mr. Martin with anxiety disorder NOS (mixed anxiety and depression), secondary to a medical condition. (Tr. 231-32.) Dr. Oizumi opined that Mr. Martin was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance. (Tr. 225-30.)

On August 10, 2005, Mr. Martin had a consultative exam with Dr. McPhee at the request of the State Agency. Dr. McPhee reviewed Mr. Martin's MRI scan. Dr. McPhee noted that Mr. Martin walked with his back somewhat flexed forward and reported diminished sensation in both legs. Dr. McPhee reported a tenderness to palpation across the posterior neck and the lumbar area diffusely and bilaterally. Dr. McPhee diagnosed L4-5 degenerative disc protrusion with spinal stenosis and myofascial tenderness and chronic posterior neck pain with myofascial tenderness. He opined that Mr. Martin was able to lift 20 pounds occasionally and 10 pounds frequently and stand or walk for at least two hours in an eight hour workday. (Tr. 238-39.)

On September 19, 2005, State Agency psychologist Jocelyn Fuller, Ph.D., opined that Mr. Martin suffered from an anxiety disorder NOS. She opined that Mr. Martin was

moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 212-14.)

On December 28, 2005, State Agency psychiatrist Dr. Adrianne Galluci, Psy.D., completed a Psychiatric Review Technique Form regarding Mr. Martin. Dr. Galluci opined that Mr. Martin suffered from an anxiety-related disorder NOS that causes moderate limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. 174-76.)

On September 11, 2006, Mr. Martin received physical therapy secondary to back and neck pain. Walking short distances and turning his head aggravated his pain. He reported that medications and lying down helped to relieve the pain. On presentation, Mr. Martin exhibited extension dysfunction. He also complained of decreased range of motion in his left arm. Mr. Martin received a soft tissue massage and was prescribed an exercise program. (Tr. 365-69.)

Mr. Martin received physical therapy again on September 13, 2006. The use of a TENS unit caused him pain at the base of his neck, but somewhat alleviated his shoulder blade pain. He received cervical manual traction, a soft tissue massage, and ultrasound therapy. (Tr. 363-64.)

On September 19, 2006, Mr. Martin again had physical therapy for back and neck pain. He underwent cervical manual traction, soft tissue massage, and ultrasound therapy. Mr. Martin was advised to continue with the current program. (Tr. 361-62.)

Mr. Martin also received physical therapy on September 26, 2006. The use of a TENS unit and soft tissue massage did not provide any relief of pain. Foraminal compression and

traction aggravated his symptoms. A physical exam revealed a decreased range of motion in the left arm. The therapist recommended that Mr. Martin discontinue physical therapy due to a plateau in progress. (Tr. 359-60.) Mr. Martin was discharged from physical therapy on October 3, 2006 because of a plateau in progress. Manual therapy, ultrasound, and use of home TENS unit did not provide effective pain relief. (Tr. 357-58.)

On December 11, 2006 Mr. Martin received follow-up treatment for back and neck pain. A review of a November 30, 2006 X-ray confirmed degenerative disc disease with spondylosis. His diagnosis remained degenerative disc disease of the cervical and lumbar spine with radiculopathy, depression, and insomnia. His medications were adjusted. (Tr. 375.)

On January 11, 2007, Mr. Martin received an electrodiagnostic study secondary to bilateral upper extremity pain, numbness, tingling, and weakness. The results revealed sensory neuropathy with delayed terminal latencies of median and ulnar nerves bilaterally. (Tr. 383-88.)

Mr. Martin had an MRI of his cervical spine on January 17, 2007. Test results revealed multilevel degenerative disc changes with left lateral, left parasagittal disc herniations at C2-3 and C-4 and left-sided disc protrusion at C5-6. Mr. Martin also had a broad disc/osteophyte complex at C6-7. (Tr. 382.)

## II. Standard of Review

A district court:

> may set aside a denial of disability benefits only if it is not supported by substantial evidence or if it is based on legal error. Substantial evidence means more than a mere scintilla but less than a preponderance. Substantial evidence is relevant evidence, which considering the record as a whole, a reasonable person might accept as adequate to support a conclusion. Where

> the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's decision must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation and quotation omitted). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Also under this standard, the Court will uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). However, the Court must consider the entire record as a whole and cannot affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)(internal quotation omitted).

## III. Discussion

To qualify for disability benefits under the Social Security Act a claimant must show, among other things, that he is "under a disability." 42 U.S.C. §423(a)(1)(E). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.SC. §423(d)(2)(A).

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. §404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th

Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. §404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. §404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," for example: lifting; carrying; reaching; understanding, carrying out and remembering simple instructions; responding appropriately to co-workers; and dealing with changes in routine. 20 C.F.R. §404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." 20 C.F.R. §404.1509 (incorporated by reference in 20 C.F.R. §404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. §404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] record." 20 C.F.R. §404.1520(e). A claimant's "residual functional capacity" is the most he

7

can do despite all his impairments, including those that are not severe, and any related symptoms. 20 C.F.R. §404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." 20 C.F.R. §404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. 20 C.F.R. §404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." 20 C.F.R. §404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the Commissioner has the burden of proving the claimant can perform other work. *Reddick*, 157 F.3d at 721.

In this case, the ALJ concluded at step five of the sequential process that Mr. Martin was not disabled. The ALJ found that Mr. Martin was capable of performing sedentary work as a cashier, security monitor, and order clerk. (Tr. 21.)

On appeal, Mr. Martin does not allege the ALJ erred in his findings at steps one through four of the sequential evaluation process. Mr. Martin does argue that the ALJ: 1) failed to properly assess the credibility of Mr. Martin's subjective complaint testimony; 2) failed to properly consider objective medical evidence of disability; and 3) had no evidence demonstrating that Mr. Martin was capable of performing work that exists in significant numbers in the national economy.

**Subjective Pain Testimony**

The ALJ did not accept Mr. Martin's complaints regarding the "intensity, persistence, and limiting effects" of his symptoms to the extent alleged by Mr. Martin. (Tr. 20.) If a claimant produces objective medical evidence of an underlying impairment, as Mr. Martin did here, then the ALJ cannot reject the claimant's subjective complaints based solely on a lack of objective medical support for the alleged severity of the pain. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). If the ALJ finds the claimant's subjective pain testimony not credible, the ALJ must make findings sufficiently specific to allow the reviewing court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Id*. at 856-57. If no affirmative evidence of malingering exists, then the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony about the severity of his symptoms. *Id*. at 857.

Because no affirmative evidence of malingering exists, the ALJ had to provide clear and convincing reasons for disbelieving Mr. Martin's reports of the severity of his pain. The ALJ offered the following reasons for not fully crediting Mr. Martin's subjective complaints:

> First, Dr. McPhee's report noted that although the claimant walked with a cane, he was able to walk without the cane. He was also able to tandem walk and stand on his heels and toes without the cane (Exhibit 1F/pgs. 79 and 80). Second, the records of Phoenix Pain Management for the period September 16, 2004 through April 2, 2007, show that, overall, the claimant had adequate pain control (Exhibits 2F and 4F). Third, Dr. Oizumi's report shows that the claimant did not have limitations in his mental functioning that were sufficient enough to prevent him from being able to do simple tasks (Exhibit 1F/pg. 73). Fourth, although he told Dr. Oizumi that he could not hold a job because of his physical problems, his work history shows that he has never tried to work at a sedentary level job. Fifth, with regard to activities of daily living, his activities do not seem significantly limited. He reported to Dr. Oizumi that he did

9

> laundry, loaded the dishes, did some cooking, and went to the store. He is able to drive. (Exhibit 1F/pg. 72)
>
> In conclusion, the objective medical evidence fails to establish that the claimant has had limitations in his ability to function that have been sufficient enough to prevent him from performing sedentary work.

(Tr. 20.)

While the Court finds that the ALJ provides mostly "clear" reasons for discounting Mr. Martin's subjective pain testimony, the ALJ does not provide "convincing" reasons. The ALJ's first stated reason for not fully crediting Mr. Martin's testimony is that even though Mr. Martin walked with a cane, he completed a walking test without a cane for Dr. McPhee. Mr. Martin never testified that he needed a cane to walk. But just because he might not absolutely need a cane to walk, does not mean that a cane does not help his gait problems. In fact, the medical records indicate that he was using the "appropriate cane" for his condition. (Tr. 320.) Mr. Martin's use of a cane to walk does not lessen his credibility.

The ALJ next argues a lack of credibility because the Phoenix Pain Management records indicate that, overall, Mr. Martin had adequate pain control. The Court does not agree with that assessment. Mr. Martin's medications changed frequently, which indicates a certain lack of efficacy. Further, Mr. Martin attempted use of a TENS unit, massage therapy, physical therapy, and other treatment options because he persistently had problems with pain, despite his treatments and medications.

The ALJ's third reason for discounting Mr. Martin's subjective complaints involves Dr. Oizumi's opinion that Mr. Martin did not have limitations in his mental functioning that were sufficient enough to prevent him from being able to do simple tasks. The Court is

unsure how Dr. Oizumi's observation discredits Mr. Martin's pain testimony. The ALJ does not adequately explain how Dr. Oizumi's opinion contradicts Mr. Martin.

The ALJ offers Mr. Martin's lack of experience in a sedentary job as reason number four for doubting his pain testimony. The ALJ writes, "Although [Mr. Martin] told Dr. Oizumi that he could not hold a job because of his physical problems, his work history shows that he has never tried to work at a sedentary level job." (Tr. 20.) The Court does not agree that it necessarily follows that Mr. Martin could not assess his own inability to hold a sedentary job. The Court does not find this a persuasive reason to discount Mr. Martin's pain testimony.

The ALJ's final reason for partially discrediting Mr. Martin's testimony is Mr. Martin's ability to engage in certain daily life activities; including, doing laundry, loading the dishwasher, doing some cooking, going to the store, and the ability to drive. At the time of his hearing, Mr. Martin lived with his parents. He testified that he could not help them with the housework, but that he could wipe down the counter, rinse off dishes (even though it hurt to do so), and do his own laundry. (Tr. 49-50.) As for cooking, Mr. Martin testified that on a good day he could make himself a sandwich or a bowl of cereal. (Tr. 51.) Mr. Martin testified that he mostly just lies down and watches television. (Tr. 49.)

Daily activities may only form the basis of an adverse credibility finding if a claimant can spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The mere fact that a claimant can carry on a limited amount of daily activities does not detract from the claimant's credibility as to his overall disability. *Orn* v. *Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The Commissioner must assess the claimant's ability to work on a sustained basis. *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996). The

Court finds that Mr. Martin's ability to occasionally do limited household activities does not form an adequate basis for the ALJ's adverse credibility finding.

Because no evidence of malingering exists, the ALJ needs to provide clear and convincing reasons for discounting Mr. Martin's subjective pain testimony. The Court holds that the ALJ did not meet this burden. The Court must next decide the effect of this failure.

### **Credit as True**

The Ninth Circuit Court of Appeals first addressed the appropriate judicial response to an ALJ's failure to give adequate justification for rejecting a claimant's pain testimony in *Varney v. Secretary of Health and Human Services (Varney II)*, 859 F.2d 1396, 1398-99, 1401 (9th Cir. 1988). In that case, the Ninth Circuit Court of Appeals adopted the so-called credit-as-true rule; holding that the Commissioner must accept, as a matter of law, a claimant's subjective pain testimony if the ALJ fails to articulate sufficient reasons for discrediting it. *Id*. But the holding in *Varney II* was specifically limited to cases "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited." *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)(quoting *Varney II*, 859 F.2d at 1401). The Ninth Circuit Court of Appeals has not yet decided whether courts also must apply the credit-as-true rule in cases where outstanding issues remain before a proper disability determination can be made.[4]

---

[4] The court in *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009) held that it did not need to resolve the split in authority in the 9th Circuit regarding the mandatory nature of the credit-as-true rule because of the distinguishable nature of the *Vasquez* case.

Mr. Martin argues that if his pain testimony were properly credited, then the Commissioner would have to award him disability benefits. The Court disagrees. Mr. Martin's attorney posed hypotheticals to the vocational expert that included limitations other than those relating to Mr. Martin's level of pain; for example, his propensity for napping. The ALJ's clear and convincing burden applies to the determination regarding Mr. Martin's credibility on his level of pain, not other issues. The Court does not think that the administrative record, as it stands, demonstrates that Mr. Martin must be awarded disability benefits if his testimony regarding the extent of his pain is credited.

Because the Court finds that there are outstanding issues that must be resolved before a proper disability determination can be made and because the Ninth Circuit Court of Appeals has never held that the Court must apply the credit-as-true rule in such circumstances, the Court will not apply the credit-as-true rule here. Instead, the Court will remand to the Commission for a new hearing and a new determination regarding Mr. Martin's entitlement to disability benefits.

Accordingly,

IT IS ORDERED Vacating the Commissioner's Decision and Remanding this case for further proceedings.

DATED this 22nd day of March, 2010.

*James A. Teilborg*
United States District Judge